IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-1996-PSF-PAC

ADAIR GROUP, INC.,

    Plaintiff,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY,
a Minnesota Corporation,

    Defendant.

**ORDER ON PENDING MOTIONS FOR SUMMARY JUDGMENT**

THIS MATTER is before the court on Plaintiff's Motion for Partial Summary Judgment on the First Claim for Relief (Dkt. # 16) and Defendant's Partial Summary Judgment Motion on Coverage Issue (Dkt. # 18), both filed on February 28, 2005.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

This action arises from a contract dispute between entities known as BFN-Greeley LLC and BFN-Longmont LLC (collectively "BFN") and Plaintiff Adair Group, Inc. ("Adair"). In March 2001 Adair entered into an agreement to build two Housing and Urban Development housing projects for BFN. As a result of allegedly deficient work performed by Adair on the projects, BFN withheld final payment. Pursuant to the contract between Adair and BFN, Adair filed for arbitration to recover the withheld payment. BFN counterclaimed that the projects were rife with construction defects and submitted claims for the costs of bringing the property up to contract specifications.

In the arbitration that followed, Adair prevailed in its attempt to recover contractual damages. BFN was awarded a lesser amount to compensate for economic losses caused by Adair's failure to comply with its obligation to construct buildings free from faulty workmanship. Adair now seeks indemnification of the award to BFN from its insurers, Defendant St. Paul Fire and Marine Insurance Company, Inc. ("St. Paul"), under a comprehensive general liability policy ("CGL" or "policy") issued by St. Paul.

Adair originally filed this action in state court in the Denver District Court. St. Paul removed the case to this court pursuant to 28 U.S.C. § 1441. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Adair is a Colorado corporation with its principal place of business in Colorado. St. Paul is a Minnesota corporation with its principal place of business in Minnesota. Adair is seeking damages of approximately $2.5 million.

This Court referred nondispositive matters in this case to the Magistrate Judge on October 4, 2004. On February 15, 2005, the parties filed a Joint Motion to Amend Scheduling Order, in which they agreed that this action consists entirely of a dispute over coverage of the policy that can be decided as a matter of law. The parties sought leave to submit to this Court simultaneous cross-motions for summary judgment on that issue and the Magistrate Judge granted the Joint Motion on February 16, 2005.

**II.     UNDISPUTED FACTS**

The parties do not dispute the following facts for purposes of this motion:

(1)     Adair is a general contractor and insured by St. Paul under policy number KK083011731.

(2)     At all relevant times the policy was in effect.

(3)     The policy covers property damage caused by an "event."

(4)     Property damage is defined as "physical damage to tangible property of others, including all resulting loss of use of that property; or loss of use of tangible property of others that isn't physically damaged."

(5)     Event is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

(6)     The policy covers property damage that results from Adair's completed work.

## III.   ANALYSIS

### A.   Summary Judgment Standards

Summary judgment is appropriate under F.R.Civ.P. 56(c) if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When applying this standard, the Court reviews the pleadings and the documentary evidence in the light most favorable to the nonmoving party. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In addition, "'where the non moving party will bear the burden of proof at trial on a dispositive issue' that party must

'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) quoting *Celotex, supra*, 477 U.S. at 322.

### B.   Policy Interpretation Standards

Adair contends that Colorado law governs this case.  *See* Plaintiff's Motion for Partial Summary Judgment at 4-5.  St. Paul does not appear to contest this issue as it cites to Colorado case law in its brief.  The Court agrees and finds that Colorado law governs this case.

The interpretation of the terms of an insurance policy is based upon principles of contract interpretation.  *See e.g. Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999).  Words used in an insurance policy should be given their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended. *Id.*  Courts should not rewrite insurance policy provisions that are clear and unambiguous.  *Id.*

Ambiguous language must be construed in favor of the insured and against the insurer who drafted the policy.  *Browder v. U.S. Fidelity & Guar. Co.*, 893 P.2d 132, 133 (Colo. 1995).  Terms used in a contract are ambiguous when they are susceptible to more than one reasonable interpretation.  *Id.*

An insurer's duty to indemnify arises only when its policy actually covers the harm.  This duty is usually undetermined until the underlying claims are resolved. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003).

**C.     Discussion**

The Court here must determine if the damages awarded against Adair in the arbitration are "property damage" that is the result of an "event" as defined in and covered by the policy.  St. Paul argues that neither "property damage" nor an "event" has occurred.  It further suggests that even if property damage caused by an event have occurred, the damages are the result of a breach of a contract between Adair and BFN.  Adair responds that the "event" in question is the negligence of the sub-contractors in completing the work contemplated by the policy.

The arbitration award against Adair consist of offsets due to construction defects or other workmanship issues.  *See* Plaintiff's Brief in Support of Motion for Summary Judgment at 5.  To determine on which of these claims Adair can recover, the Court must then determine which construction defects was the result of "property damage" caused by an "event" under the policy.  Adair cities to numerous cases in which courts have found construction defects and deficiencies be covered property damage.  However, in these cases, the defect or deficiency at issue caused some form of property damage beyond the construction defect or deficiency alone.  *See Helca Min. Co. v. New Hampshire Ins.* Co., 811 P.2d 1083 (Colo. 1991) (CGL covered environmental damage caused by mining operations); *Cyprus*, *supra* (CGL policy covered property damage caused by a landslide); *Colard American Family Mut. Ins. Co.*, 709 P.2d 11 (Colo.  App.  1985) (unintended poor workmanship of the contractor created an exposure to a continuous condition that resulted in property damage to plaintiffs); *Hoang v. Monterra Homes (Powderhorn) LLC*, 2005 WL 427936 (Colo. App.

February 24, 2005) (CGL policy covered damage to homes caused by soil problems). None of these cases stand for the proposition that construction defects and deficiencies in and of themselves constitute property damage.

In contrast, *Union Ins. Co v. Hottenstein*, 83 P.3d 1196 (Colo. App. 2003), appears to be on point. In that case, the appellant, Hottenstein, had previously filed a complaint against a construction company and its owner, alleging several claims, including breach of a contract to remodel her home and negligence. The construction company was covered by Union Insurance Company under a commercial general liability policy. The trial court held that Union had no duty to indemnify the construction company for the damages of $67,250 for breach of contract and $3,000 for loss of enjoyment. *Id.* at 1198. The court of appeals, in affirming the trial court's interpretation of a near identical policy as the one in this case, concluded "that poor workmanship constituting a breach of contract is not a covered occurrence here and that the policy's exception to the contract exclusion does not apply." The court further concluded that the policy was not ambiguous. *Id.* at 1202.

Judge Kane of this Court addressed a similar issue in *DCB Constr. Co., Inc. v. Travelers Indem. Co. of Illinois.*, 225 F. Supp. 2d 1230 (D. Colo. 2003). In that case, dcb Construction Co. was a contractor on an airport hotel construction project. The walls of the hotel failed to meet contract specifications for sound transmission and had to be repaired. Dcb sought indemnification from its insurer, Travelers Insurance Company, arguing that the continuous and unintended exposure to excessive sound transmissions through the walls constituted an "occurrence" that rendered the walls damaged.

In rejecting dcb's argument, Judge Kane first noted that "the general rule that the rejection of performance is a business risk to be allocated by the parties in contract and not a risk covered by liability insurance is sound and was recognized as the law in Colorado." *Id.* at 1232. He went on to find:

> Dcb's efforts to turn that breach into a covered "accident" under the general liability insurance policy by bootstrapping on its subcontractor's "negligence" in designing the walls contrary to specifications are unavailing. Dcb failed to perform under the contract to the owner's specifications and Travelers, as a matter of Colorado law, cannot, through its general liability coverage, be made a guarantor of that performance.

*Id.*

In this case, the parties dispute whether the definition of "event" is ambiguous. Adair contends that the definition of "accident" in the definition of "event" is ambiguous. *See* Plaintiff's Brief in Support of Motion for Summary Judgment at 6. A majority of Colorado courts have found the definition of "event" as defined in the policy to be ambiguous. *See e.g. Helca*; *Cyprus*; *Colard*; *Hoang*; *cf. Hottenstein* (holding that "occurrence" defined similarly to "event" in the policy was not ambiguous). Because a majority of Colorado courts have found the definition of "event" as used in the policy as ambiguous, this Court likewise finds the definition of "event" as used in the policy is ambiguous and should be interpreted in favor of Adair.

However, even so interpreting the policy in favor of Adair, the Court agrees with St. Paul that incomplete work does not, by itself, constitute property damage. Damage envisions a change in condition of an object from its undamaged state. There is no change in condition of an object from an undamaged state in incomplete work. Rather,

there is no change in condition at all.  Incomplete work, until completed, retains its state of incompleteness.

In this case, the incomplete work resulted in a breach of contract.  As such, there was no accident that would give rise to an "event" as defined in the policy.  To hold otherwise would transform a CGL policy into a performance bond.  As Judge Kane noted, such a holding would be contrary to well established Colorado law.  *DCB* at 1232.  Having found that there was no covered "event" under the policy, the Court does not need to address whether incomplete work, in and of itself, constitutes property damage.

As an additional ground for granting summary judgment, the Court notes that the exclusion for impaired property would also preclude coverage under the policy.  Although St. Paul does not argue this point explicitly, the Court, in reviewing the policy, finds that a breach of contract by Adair is not covered under the policy because of an exception that reads: "We won't cover property damage to impaired property, or to property which isn't physically damaged, that results from . . . a delay or failure in fulfilling the terms of a contract or agreement."  *See* Exhibit B to Defendant's Motion for Partial Summary Judgment at p. 17 of 26.  Thus, even if the Court found property damage, the policy would not cover such damages because they were caused by Adair's failure to fulfill the terms of the contract with BFN, which the policy excludes.

The arbitration award against Adair stems from a failure in constructing the properties to contractual specifications even if the workmanship problems were the fault of subcontractors, Adair's agents, not Adair itself.  The exclusion clearly and unambiguously excludes damage to impaired property or to property that is not

physically damaged that results from a "failure in fulfilling the terms of a contract or agreement." A similar exclusion clause was found by Judge Kane to exclude coverage. *DCB* at 1233. The Court finds that the exclusion would also preclude coverage under the policy.

## IV.  CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion for Partial Summary Judgment on the Issue of Coverage (Dkt. # 18), filed February 28, 2005. Plaintiff's Motion for Partial Summary Judgment on the First Claim for Relief (Dkt. # 16), filed February 28, 2005, is DENIED. The final award in arbitration to the extent favorable to the BFN entities and against plaintiff does not trigger coverage under St. Paul's policy no. KK083011731. This case is hereby dismissed.

DATED:  June 28, 2005

BY THE COURT:

s/ Phillip S. Figa
_____
Phillip S. Figa
United States District Judge